511 So.2d 1104 (1987)
Albert HAMPTON, Appellant,
v.
A. DUDA & SONS, INC., Appellee.
No. 86-357.
District Court of Appeal of Florida, Fifth District.
September 3, 1987.
H. Scott Bates of Mateer, Harbert & Bates, P.A., Orlando, and Stenstrom, McIntosh, Julian, Colbert & Whigham, Sanford, for appellant.
Mitchell J. Frank of Rogers, Dowling and Bos, Orlando, for appellee.
Cathy Jackson Lerman, P.A., Fort Lauderdale, for amicus curiae Academy of Florida Trial Lawyers.

ON MOTION FOR CLARIFICATION
COBB, Judge.
Initially, we issued a per curiam affirmance in this case, citing to Pait v. Ford Motor Co., 500 So.2d 743 (Fla. 5th DCA 1987). On Motion for Clarification filed by the appellant, Albert Hampton, and pursuant to a sua sponte reconsideration of this case in view of the recent Florida Supreme Court opinion in Nissan Motor Co., Ltd. v. Phlieger, 508 So.2d 713, 715 (Fla. 1987) (Grimes, Justice, concurring specially in result), we vacate our prior opinion and substitute therefor the following:
Albert Hampton was injured in 1978 by an agricultural harvesting machine which he had purchased from its manufacturer, Duda & Sons, Inc., more than 20 years prior to the injury. Hampton filed suit against Duda in 1982 within the four-year statute of limitations. See § 95.11(3), Fla. Stat. (1981). Duda raised as an affirmative defense the twelve-year statute of repose, section 95.031(2), Florida Statutes (1983), which provides:
Actions for products liability and fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event within 12 years after the date of delivery of the completed product to its original purchaser or within 12 years after the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered.
Duda was granted a summary judgment by the trial court on the basis that Hampton's action was barred by the foregoing statute, the constitutionality of which was first rejected by the Florida Supreme Court in Battilla v. Allis Chalmers Manufacturing Co., 392 So.2d 874 (Fla. 1980), and then revived by a subsequent decision by the *1105 same court in Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla. 1985).
On appeal Hampton contends that, since his cause of action accrued and suit was filed prior to Pullum, Battilla controls and Pullum should have no retroactive application. Clearly, this contention is wrong. A supreme court decision which overrules a prior decision is retroactive in its operation, unless specifically declared by the decision to have prospective effect only. Florida East Coast Railway Co. v. Rouse, 194 So.2d 260 (Fla. 1967); Florida Forest & Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251 (1944). The Pullum decision was silent on the question of retroactivity. Moreover, if a decision holding a statute unconstitutional is subsequently overruled, the statute is valid from the date of its enactment. State ex rel Gillespie v. Bay County, 112 Fla. 687, 151 So. 10, 22 (1933); Christopher v. Mungen, 61 Fla. 513, 534, 55 So. 273, 280 (1911).
There is an exception to the general rule of retroactive application, as set forth in Strickland:
To this rule, however, there is a certain well-recognized exception that where a statute has received a given construction by a court of supreme jurisdiction and property or contract rights have been acquired under and in accordance with such construction, such rights should not be destroyed by giving to a subsequent overruling decision a retrospective operation.
18 So.2d at 253.
In the instant case, Hampton acquired no property or contract rights under the court's construction in Batilla. Nor did Hampton act in reliance on the Batilla declaration of the unconstitutionality of section 95.031(2), and thereby miss a limitation deadline for filing suit with which he otherwise could have complied. At the time of Hampton's injury, the twelve years following delivery of the harvester to Hampton had long since passed. We note that the specially concurring opinion of Justice Grimes in Nissan explains why the Strickland exception does not apply where an accident occurs after expiration of the twelve years, and there is no detrimental reliance by a claimant on the erroneous court decision.
The majority opinion in Nissan, which held that section 95.031(2) does not apply to wrongful death actions, is irrelevant to the instant case, which does not concern wrongful death. Our previous cite to the Pait decision in our initial per curiam opinion herein was improvident for the same reason: Pait was a wrongful death case.
For the foregoing reasons, the summary judgment below is
AFFIRMED.
UPCHURCH, C.J., concurs.
ORFINGER, J., concurs specially with opinion.
ORFINGER, Judge, concurring specially.
I fully concur in the majority opinion and its result, but write only to support our original reliance on Pait v. Ford Motor Co., 500 So.2d 743 (Fla. 5th DCA 1987), which I believe is still justified even after the decision in Nissan Motor Co., Ltd. v. Phlieger, 508 So.2d 713 (Fla. 1987).
It is unfortunate that we did not discuss in Pait our prior decision in Nissan,[1] not because it would have affected the result, but in order to distinguish it from the facts in Pait. As this court pointed out in Nissan, and as the supreme court pointedly noted in its opinion
at the moment of Jay Phlieger's death, the twelve years had not yet run. Therefore, unlike the decedent in Perkins, Mr. Phlieger had a right to maintain an action against Nissan at the time of his death; and thus, Mrs. Phlieger, acting as his personal representative, had a statutory right to bring an action based on injuries suffered by Mr. Phlieger's survivors as a result of his death. See Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213.
At 715. Thus, Nissan is only the most recent of a long line of supreme court *1106 opinions that established that every wrongful death claim is predicated upon there having been a valid right of action in the decedent at the moment of his death. Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277, 280 (Fla. 1985); Ash v. Stella, 457 So.2d 1377 (Fla. 1984); Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla. 1983); Epps v. Railway Express Agency, 40 So.2d 131 (Fla. 1949); Collins v. Hall, 117 Fla. 282, 157 So. 646 (1934); Carter v. J. Ray Arnold Lumber Co., 83 Fla. 470, 91 So. 893 (1922); Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894). Relying on these decisions, several district court decisions have also recognized the rule that the decedent must have a valid cause of action at his death as a condition precedent to his survivor bringing a cause of action under section 768.19. See, e.g., Hudson v. Keene Corp., 445 So.2d 1151 (Fla. 1st DCA 1984), affirmed, 472 So.2d 1142 (Fla. 1985) (no wrongful death action because decedent "would not have been able to maintain an action against appellees if death had not ensued due to the running of the limitations period with regard to the personal injury suit"); Nance v. Johns-Manville Sales Corp., 466 So.2d 1113, 1115 (Fla. 3d DCA 1985) ("Following the supreme court's decision in [Variety] ... our initial inquiry must be whether the decedent's personal injury action would have been barred during his life."); Phlieger v. Nissan Motor Co., Ltd., 487 So.2d at 1098 ("[P]laintiff's right of action under the wrongful death statute must be determined at the time of death of decedent."). This firmly entrenched rule rests on the language of the statute itself:
Right of action.  When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.
§ 768.19, Fla. Stat. (1985) (Emphasis added). Thus the statute, as interpreted by the supreme court, requires that a decedent have a valid cause of action "if death had not ensued," before his survivors can sue to recover damages for his wrongful death.
In Pait, as in the case sub judice, the injury occurred more than 12 years from the time that the product was sold. Thus, even if death had not ensued as a result of the defendant's defective product, because of the statute of repose, the decedent would have had no cause of action against the manufacturer.[2] Because the decedent *1107 could not have maintained an action for products liability, there was no basis for a wrongful death suit because this prerequisite had not been met. Any statements by the supreme court in Phlieger suggesting that section 95.031(2) does not apply to wrongful death actions must be read in the context of the facts in that case and the above-discussed principle which underlies wrongful death actions, viz: that a right of action to sue for his injuries must first have existed in the decedent at the time of his death.[3] Nothing in the Nissan opinion leads to the conclusion that the court is receding from its earlier cases, such as Perkins, espousing that principle. On the contrary, Nissan reasserts it.
Finally, I am not unaware of the supreme court's continued repetition of the fact that Florida's wrongful death action "creates a new and independent cause of action in the statutorily designated beneficiaries." Nissan, 508 So.2d at 714, and cases cited therein. Nevertheless, the actual holdings of the supreme court's cases indicate that the beneficiary's right to bring an action is limited by the requirement that the decedent have a valid cause of action at the time of his death. In his dissent in Variety, Justice Adkins contended that the majority opinion had adopted the "derivative approach" to wrongful death actions, by which the beneficiary's right to maintain a wrongful death action is dependent on the decedent's ability to have maintained a personal injury action at the moment of death. 445 So.2d at 1014. Justice Adkins criticized the majority holding as inconsistent not only with the legislature's intent to provide compensation for a decedent's beneficiaries, but also with previous opinions suggesting that a wrongful death action is not derivative from any action which the defendant may have maintained had not death ensued. Id. See also Note, Wrongful Death Action Barred by Victim's Prior Recovery: Was Legislative Intent Ignored?, 14 Stetson L.Rev. 263 (1984-85). The dissent in Variety raises questions about the continued validity of Stokes v. Liberty Mutual Insurance Co., 213 So.2d 695, 698 (Fla. 1968) (wrongful death action "is not a derivative action in a technical sense because it awards damages suffered by the parent independently of any right of action in the deceased minor.")[4] and Shiver v. Sessions, 80 So.2d 905 (Fla. 1985) (doctrine of interspousal immunity does not bar wrongful death action, even though decedent's personal injury action against tortfeasor would have been barred).
Thus it appears that the extent to which a beneficiary's cause of action is limited by defenses available to the defendant against the decedent is still an open question.[5] Nevertheless, I am compelled by the long line of cases holding that a valid cause of action must exist at the moment of the decedent's death, to conclude that the plaintiff in Pait, and any other plaintiff in a wrongful death action predicated on an injury occurring more than 12 years after the sale of the product which results in death, is barred from maintaining an action by section 95.031(2), Florida Statutes.
The majority here believes that Phlieger stands for the proposition that a wrongful death action may be brought within the limitation period for that action (two years), notwithstanding the fact that the injury which later resulted in death occurred from a defective product which had been sold to its original purchaser more than twelve *1108 years before the injury occurred. My view is that Phlieger requires the existence of a viable cause of action at the time the death occurs, and that no such cause of action exists if the injury caused by a defective product occurs more than twelve years from the time the product was delivered to the original purchaser. Both views were recently examined by the Third District in Henley v. J.I. Case Company, 510 So.2d 342 (3d DCA 1987), with that court opting for the same interpretation accepted by the majority here. An answer to the question certified in Henley will lay this dispute to rest, and be of great benefit to the bench and bar of this state.
NOTES
[1] Phlieger v. Nissan Motor Co., Ltd., 487 So.2d 1096 (Fla. 5th DCA 1986).
[2] Statutes of repose have been interpreted as being different from ordinary statutes of limitation:

We recognize the fundamental difference in character of these provisions from the traditional context of a statute of limitations. Rather than establishing a time limit within which an action must be brought, measured from the time of accrual of the cause of action, these provisions cut off the right of action after a specified time measured from the delivery of a product or the completion of work. They do so regardless of time of the accrual of the cause of action or of notice of the invasion of a legal right.
Bauld v. J.A. Jones Construction Company, 357 So.2d 401, 402 (Fla. 1978). Put another way, "A statute of repose does not bar an action; its effect rather is to prevent what might otherwise be a cause of action from ever arising." Lamb v. Volkswagenwerk Aktiengesellschaft, 631 F. Supp. 1144, 1147 (S.D.Fla. 1986). Other states have similarly recognized the distinction between statutes of limitations as defining procedural rights, and statutes of repose as defining substantive rights. See Bolick v. American Barmag Corp., 306 N.C. 364, 293 S.E.2d 415 (1982); Kline v. J.I. Case Company, 520 F. Supp. 564 (N.D. Ill. 1981) (products liability statute); Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381, 1387-88 (La. 1978) (improvement to immovable property statute); Rosenberg v. Town of North Bergen, 61 N.J. 190, 199, 293 A.2d 662, 667 (1972) (improvement to real property statute). If the statute of repose defines a substantive right, then the issue in Pait was not whether the decedent was barred from bringing an otherwise valid cause of action against the manufacturer. Rather, the question was whether there was any basis for liability at the time of his death. Put another way, if the liability of the manufacturer terminated 12 years after the sale of the product which killed the plaintiff's decedent, then there was no basis for liability in the wrongful death suit to allow recovery for damages caused to the decedent's surviving beneficiaries.
[3] After recognizing the crucial fact that "Mr. Phlieger had a right to maintain an action against Nissan at the time of his death," the court stated the issue to be: "[D]oes section 95.031(2) apply to bar this otherwise viable cause of action." 508 So.2d at 715. (Emphasis added).
[4] This dictum is directly contrary to the later holding of Perkins, which was that the parents could not recover for damages caused to them by their minor son's death where "[a]t the moment of his death the injured minor Anthony Perkins had no right of action against his tortfeasor because his cause of action against the tortfeasor had already been litigated, proved and satisfied." Perkins, 445 So.2d at 1012.
[5] The supreme court has accepted jurisdiction in Pait, now Case No. 69-917, and this issue may very well be addressed in that case.